MR. DILLARD, LLC. Good morning, everyone. I'm here in the police court in the name of the Attorney General, Christy Parker-Hale. I'm representing the Blue Ridge, a felon-hunting specimen. I believe this appeal raises at least a couple of issues in claim construction. One is whether the district court, or in this case Judge Wyszynski from the Ninth Circuit Court of Appeals sitting by designation, read into the claims in extraneous or extrinsic limitation improperly and then relied upon that claim limitation. What's the claim limitation? The claim limitation is the exclusion or the limiting of the images to vertical flat images, which in turn also excludes curved or spherical images. And what you're saying is that, at least on a straight-on view, that the Google images are indistinguishable from yours, and that when Google is providing that straight-on view, it's infringing, correct? Exactly, Your Honor. Right, and you're not contending that it infringes in other respects? No. The Google straight-view system has a great deal of different views that are not infringing, that are not substantial elevations of objects in the view. Okay. So what strikes me is, and I found the briefs a bit confusing, but it seems to me that the argument might be, well, if you're saying that the patent is directed to the images on the screen, displayed on the screen, there's infringement. But if instead you talk about the database that is collected, and if you say that the database has to be substantially elevation, then Google doesn't infringe because its database is not composed of images that are substantially elevation. Does that argument, do you understand what I'm saying? I understand what you're saying. Okay, so why would that be wrong? Well, Google collects images and stores the images in a particular format. In this case, it's a two-dimensional format. But in any event, the image data can be retrieved from the particular image and used to, for example, in the creation of a spherical image. And they create these, at least as a construct in explaining their mathematics, a spherical image based on this. But they also use that same data in the creation of flat views which appear on the user's screen. Yeah, I understand that. And if the claim is directed to the views on the screen, to the displays on the screen, to the views on the screen, I think you make a very good argument that it infringes some of the time. I understand that. But it seems to me the other argument is, well, the Google database has all sorts of images in it, and it's not substantially limited to elevation views. It has all sorts of other views. So if the patent is directed to what's in the database, they argue, I think, that it doesn't infringe. Whereas you're saying, no, no, we look at the display on the screen, and it does infringe some of the time. So why is that database interpretation wrong? Well, the claim limitation is retrieving images from an image source wherein the images depict views and so forth. The images include what's displayed, but also the data that is used in creating that display. Now, Google has that data plus a lot more data to allow them to do the spherical images. But just because they have more data doesn't mean that they don't have the data that's necessary to create the views on the screen. So maybe that point can be put in terms of the claim language. The claim to use Claim 1 says an image source, that's the database, has to provide a plurality of images, so more than one image depicting views in an area, those views being substantially elevation. So as long as there's a plurality of images that are supplied, and those images in that group depict substantially elevations, your position is that's what the substantially applies to? Is that what you're trying to do? So our view is that images means the displayed image. That's the easy part. It also, because you have these stored images, you have stored image data, it's not stored as a visual image, that that data contains whatever is necessary to create the display. Otherwise you wouldn't be able to create that flat elevational display. Let me, just so we're on the same page, at least as I understand Judge Dyke's question, suppose the Google database has a million images, and a thousand of them are substantially elevations, in your term. But all of the rest are these odd angle views, so that if you look at the database, you wouldn't say substantially what's in there are elevations. And I think your position is that's not the right way to look at it, but the question is, is it or is it not? I don't think it's the right way to look at it. And the question is why? The images in the Google database are stored, for example, if we use the explanation, if you have a globe, a spherical globe, and you flatten it out, stretch it, and make it into a rectangle, that's the way that Google stores its spherical images. Within that file of data is data that will produce all their different views for that one location. So you may have a hundred different views. So is it what's stored in the database, separate little files of each tile, or some algorithm for reconstructing the tiles that will then form the image on the screen when it's actually sent to a screen? Well, it includes pixel data that is used. They divide up, as I understand it, the rectangular image data set into tiles and send them off. Those are processed so that they can be displayed on the screen. So every display on the screen has got to originate from the image data that's stored by Google. Otherwise, you wouldn't be able to see it. So it's like you can work backwards. Just in the thinking, if it's displayed, it had to have been stored and retrieved. Now the fact that they're storing and retrieving additional information... We're discussing infringement a great deal. If there's an erroneous claim construction, would that require us to send this back on its own? I believe so, your Honor. The fact that the summary judgment was granted to Google on the basis that their images were curved as opposed to flat, which, considering they're on a flat screen, we have trouble with that aspect of it. But even though they're curved, they could be imperceptibly, not perceptibly different from a flat image. Yet Judge Kuczynski still ruled that even though you couldn't tell the difference by the naked eye when it was curved, and therefore, based on the claim construction, Google had to receive some retrieval. And if you're talking about views of something, if you can't see a difference between one view and another one with the naked eye, how can you call it different? Well, particularly with the word substantial. What? Particularly with the word substantial. You're right. Yes, that's right. It basically reads that limitation out. But now there's this idea that the claims are... So what is the flaw in the claim construction in your mind? The court basically adopted Google's construction for images depicting views of using substantial elevations. Vertical, flat images. Vertical, flat, in parentheses, as opposed to curved or spherical, in parentheses, depictions of front or side views. But we have the word elevations, and elevations in some technical dictionaries includes kind of this vertical, flat suggestion. In some of the technical dictionaries, in fact, they were pointed out in the briefs. I will point out that every single one of those definitions are for technical drawings. It's pretty hard to get one of those drawings out of a camera, right? You could do it if the field of view were a slide, a microscopic slide, where the lens might be the same, but not for a scene, a street scene. Correct. And besides, even in the dictionaries that they cite, at least a couple of them have much broader definitions, like the faces of a building or the facade of a building, which are much more applicable to photographs, which by their nature have to have some perspective. Even if they're not a corner, a front view will have some depth to it. Can I ask you this one question before you sit down? Why did you change the language of your claim in response to the rejection based on Levine? I understand that the examiner said that he thought that Levine had some non-aerial views in it. Do you agree that Levine actually did have any non-aerial views in it? I don't recall any non-aerial views. There were a number of amendments to the claim at that point in time. I think the substantial elevation was an attempt to bring out the preferred embodiment of views that are captured by that, and to distinguish over aerial views, because they would be street-level views. Thank you, Mr. Dillard. Mr. Josepher. Good morning. Where in the claim language do you see anything about vertical flat? It's the term for substantially elevations. The specification doesn't address flat or vertical, does it? The specification doesn't even use the term substantially elevations because this was a narrowing amendment during prosecution. I understand. But it does say, the spec says you used cameras. It even specifies a fisheye lens. How do you take a picture with a fisheye lens without getting a curved spherical image? Honestly, that's not clear. How do you do it? In fact, how do you get a vertical flat image of anything without having a lens of the same size as the thing that you're taking a picture of? So, any lens which is a normal size is going to, by definition, have a spherical curved component, right? It's not going to be a perfect elevation unless, as you said, you have a very large lens. But that's what the word substantially is, therefore, to adapt this term, which they agreed in the district court, came from architecture to the context of photography. In fact, figure 16 in the spec shows perspective, doesn't it? I mean, we're looking at the claim, the claim language, the specification, which enlightens that. We see an awful lot that suggests the need for a reasonable spherical curve relationship isn't vertical flat, by definition, wrong? Well, no. There are two things. One is you're not going to have something that's perfectly vertically flat. I agree. But that's why you have the word substantially. The reason it won't be perfectly vertically flat is if you're taking a picture of something, unless the lens is as tall as the building. Well, as you said, the substantially is there to allow some deviation. But the deviation is from the term elevation, which is to say from vertically flat. What that means, logically, is context. If I take a picture of something that's taller than the camera lens, I won't be looking across at a 90 degree angle at everything, like it would be in a bluegrain, which is an elevation. Instead, it'll be a couple of years up, a couple of years down to capture it all. That's a reasonable adaption of the term elevation here. Well, you seem to be agreeing now that the specification and the claim should allow some degree of curvature and sphericalness. But then you have to be also agreeing that this goes back, right? Because that's not what Judge Kosinski said. He said it's vertical flat, period. It doesn't get you the sphere. He said it doesn't get you the sphere. If you think of there's elevations like blueprints, there are spheres. But he's carved out curved or spherical images. Spherical images. Substantially elevation means the closest elevation to the north. Let's assume hypothetically that it's wrong, that that interpretation is wrong, and that if we're talking about what is displayed on the screen, that at least for a number of the Google images, it's indistinguishable from what the patent here has described. Let's assume that. Is there an argument left to you? Do you have an argument left? And in particular, the suggestion I made was that you are arguing that the database has to be composed substantially of elevations, that your database, say, take Judge Toronto's hypothetical, is 1% substantially elevations and the rest of it different views. Is this claim directed to what's displayed on the screen or is it directed to the database? There's no question it's directed to the image that is processed and stored in the computer server and can be retrieved from the computer server. The image or all the images? Well, it refers to images depicting views, the views being substantially elevations. Can we take it image by image? Well, to infringe, all of the views have to be substantially elevations, and then the images depict the views. Substantially elevations refers to views, not images, right? Right. Although, for current purposes, there's no meaningful difference. So why does it matter whether the images are curved or spherical? Well, because the images depict the views, as our expert testified. Yeah, but it's interesting on the point that Judge Dyke is making that substantially is linked to views, not images on the database. Substantially elevations. So the view has to be substantially an elevation, just about an elevation. Giving, as you suggested earlier, some reason to see that you can use a small lens because you're going to have some degree of curvature in any view. That is what substantially has some sense in saying, but the substantially isn't on the question of images, is it? No, the views are substantially elevations. No, it's not substantially. Images are substantially of a certain character. It's the views, which of course accommodates the use of the camera lens, right? Right, but the images depict the views, so it's a practical matter here. The difference between a view and an image seems to be confusing and not helpful here. The claim language is directed to each individual view. It's saying an individual view. Is that the way you're interpreting it? Well, here, every individual view is stored. Every individual sphere. In order to determine the credential, we take it individual view by individual view. Do you agree with that? It's fine with us. Well, it depends. In the computer, yes, because in the computer, which the claim talks about, it's all spherical. And that's an underlying – that's not a disputed fact. I mean, our experts – it's not disputed, I believe. The images are taken, are curved pictures, are processed into a sphere, and are then broken into tiles, which are the pieces of the outside of the sphere, so they're the sphere, and are then – that's what's then stored and retrieved from the database. If we're looking at the database, which is what the claim talks about, that image that can be in the database, it's all spherical. And that's what – or a key point is summary judgment. But even if you look then to what shows up on any given screen, which in theory could differ based on the screen, if you look there, because you're looking at a spherical object that's being put on a two-dimensional screen, it remains spherical. And I can't say there's any better – I mean, but it says substantially. If you're addressing what's displayed on the screen, and everybody's agreed that a camera lens can't reproduce an architectural drawing, there has to be some curvature to it. And why isn't such an image, when it appears on the screen, infringing if it's a straight-on view of the building, even if it has some minor curvature? Because you have – this is the argument. If you look at a view – if you pull up a straight-view view, if you look at it as a zero-pitch, a straight-ahead equator view, you won't be able to notice on a two-dimensional screen that it's curved. Let's say, therefore, our answer is one, it's still spherical. A ball is round no matter how you look at it. Ever since Magellan, we've known it's round no matter where you're looking at it. Well, that's where the word substantially comes in. But even if you're looking at it from – even if you're looking at it from the perspective of what you see on the screen, pull up the views of objects. Pull up a view of a building. If I look at it at zero-pitch, I won't be able to notice at that particular pitch, right? But then I move up and then I just look up a degree or down a degree. It's still the same. I'm still looking at the same view of the object from a slightly different angle, the same view, the same object, slightly different angle. They agree it infringes. Excuse me, they agree it does not infringe because they say it's no longer a zero-pitch, substantially elevation. So it's not just that they're saying that only a small percentage of the views infringe. They're saying the small percentage of views infringe when you look at them in one particular way as opposed to another. And so all of the views, because they're spherical, and because they're spherical, all of the views are in fact spherical. Even if you look at that view of that building in one particular angle, you squint at one particular angle, you won't be able to see the curvature. You just look up or down and you will. And so that needs to go back, doesn't it, to determine what angle is being used at any particular image? Well, in street view, the view, the whole point of street view writing is you have this immersive experience where I can look up, down, and around and see everything. So as a matter of non-infringement, none of this infringes because the view actually is spherical. And most of the ways that I can look at the view, I can actually see that it is spherical. But that's assuming that we keep the claim construction that says it has to be literal flat. And we, I think, are moving decidedly to the view that that is nowhere in the claims, nowhere in the specification, and that figure 16 at a minimum shows exactly the opposite. If we could turn to that, because substantially elevation doesn't mean not an elevation at all. It doesn't mean take the claim limitation and toss it out, right? And so if we build this up… We're not tossing it out. We're trying to get the right one, which is, as you're saying, there's always going to be some degree of curvature in any image, particularly if it's taken with a camera that isn't 40 feet high. But let's talk then about… Why doesn't it just be in the main looking at the street scene horizontally? Well, the idea of an elevation, right, is that it's… Of a pure architectural… The buildings, the sides of the streets, horizontally. Why is it nothing more than that? Sure. Well, let's compare… Just explain the difference. If it's page 2 of their reply brief, they have the two figures. The top is an embodiment of their invention. The bottom is a picture from Street View to compare them. In the top, what do they have for the… Page 2, excuse me, of their reply brief. The top. Why is this substantially an elevation? The way that they prepared this is that you would have a car moving down the street with cameras looking directly at that side of the street. And about every, for example, 30 feet, you take another picture looking right at that side. And then what you do later is you take those different pictures taken from different places and you put them next to each other. So that it is a direct elevation from a number of points and then it blurs off a little, right? At every scene, there's going to be a little bit of curvature. Right, but the point, though, is this is substantially an elevation because you've got these pictures being put next to each other, taken at different places to give you the head-on view. And for that reason, for example, it is a scale, like an elevation, and it is no real-world perspective like an elevation. Buildings on the ends don't look smaller relative to what they would the others because they're not smaller than… In other words, it's not a perspective view because those don't look smaller than they really are at the ends, even though in real life, if they're looking as far away, they're smaller, right? And if I want to go from one end, if I wanted to see what's farther to the right, in this product, I can't figure to turn my head to look over a diagonal. I essentially keep stepping sideways to keep looking ahead. So it's substantially an elevation. Here's what we have below. For what Google Street View does, because what you have is something totally different, a bunch of pictures are taken from the same location, one location, not a series of them, it gives you something that's not at all an elevation because you're looking, you really are looking out. It's not a series of straight-ahead views next to each other. It's one view, real-world view, looking around. I can look to the side and see an actual perspective down there. It'll be smaller down there. It'll look like it's curved because it's farther down there. It's a sideways view, not just a series of straight-ahead views. Is this, by the way, is this a screenshot or a subset of a screenshot? I believe that the answer is that the one at the bottom is a screenshot, but, of course, that view you can zoom in and out and up and down and around. So you could go... Metaphorically speaking. Yeah, so metaphorically you could look at this on screen and only this, but even here... I don't hear you, Mr. Joseph, for it to be defending the flat plane construction of Judge Kaczynski. Well, it is the vertically flat as opposed to spherical explains the elevations. We agree. The one thing we agree is that substantially means it doesn't have to be vertically flat in the sense of a drawn-on blueprint. There could be... Because the camera, you have a real-world aspect to this. But what all that does, though, is it means... It still means that substantially elevations is substantially an elevation.  Why isn't that what you have, too? Pardon? When you have the shop right in front of the building. Well, if you take this view, the bottom picture I was about to get to, ours, if you notice this, if you look at... Because it's small, you can't see a lot of perspective there. But look at the street signs that are coming out from the building. They're coming straight out in real life. You should only be able to see the edge and not read them. I can read part of the edge of the street sign because... No, my point is you do see perspective a lot more than above. Above, you see in the middle, there's a tall post. You just see the side of it because it's straight on. Down below, the street signs, you can actually see the sides of them. But figure 16 is doing exactly that same thing with the street view, isn't it? In terms of the specification, remember, the specification came before they expressly disclaimed, before they added this limitation. It's showing the perspective that you're trying to focus us in on with the side of the signs, isn't it, in the figure 16? The problem is there are some things, in fact, that don't talk about spheres, don't talk about substantial elevations. In isolation, you might say they're broad. But when the specification itself, even before substantial elevations, when it specifically discusses spherical imagery, the only thing it says is that it's disclaiming. I guess I thought that that was just not true. The bottom of that column in discussing Lavoie does not distinguish what's going on there because it's spherical. It distinguishes it because it is a radically different method of taking a gazillion photos and then doing something that is extremely processing heavy and then displaying it either, it says, either on a spherical or a plane view. The distinction there just seemed to me to have nothing to do with distinguishing a vertical image, but rather is incredibly processing intensive. But that goes to the point, though, that what they are saying in this fact is that they're disclaiming the prior art Cadillac because here's an inexpensive, lower quality, but good enough way of doing things, basically having a Chevy over a Cadillac. And what they're saying there is with Google, again, instead of just taking a bunch of pictures next to each other and stacking them together, what Google does is the incredibly intensive, take lots of pictures, detailed algorithms, put it all together in something that's totally different, and also totally higher quality. And that is fundamental difference. Thank you. Thank you. Mr. Diller, two and a half minutes. Yes, a few items. On the picture at the bottom of page two of your reply brief, just a couple of quick comments. Claims don't require that every object in the image be a substantial elevation of an object. So if you have something, you know, because you do get distortion on a wide-angle view. And if you have a straight-on view in the middle and you have objects there, that satisfies the claim. Also, with respect to the longer, skinnier photograph right above that, that's in reference to a preferred embodiment. And the claims don't require the particular technique they need to do this embodiment and all those things. I mean, there are claims that require composite images made from frames at more than one location, but there are also claims that don't require that, and also claims that don't require that the image even be a composite. And the claim construction has to be appropriate for all of those different things, because all of the claims have this substantial elevations limitation. I thought I would point out that both of the parties believe that the language substantial elevations, or agree on what it means. At the appendix, page 2102, that was Baderi's claim construction brief, there's a statement, and both parties agree that views being substantial elevations refer to front, back, or side views of objects, for example, houses, buildings, etc., in the geographic area. It's at lines 13 and 14. At appendix 2337, which is a page from Google's responsive claim construction brief, page 9 and 10, the parties agree that the substantial elevations views are front, back, or side views of objects. At the beginning of all this, there was no requirement that there be vertical flatness involved, and so we believe that a construction of just front views and side views, it turns out I withdrew the back views because when you're driving down the street, you very seldom, if ever, see the back of the building. And then finally, I want to make a quick comment about the Google database. I think your time has expired, Mr. Diller. Thank you very much.